[No. 56555-9-I.   Division One.   May 30, 2006.]

*In the Matter of the Marriage of* SUSAN N. STALLMAN, *Respondent,* and DONALD R. STALLMAN, *Appellant.*

---

*Stephanie M. Searing*, for appellant.

*H. Michael Fields* and *Carena C. McIlwain* (of *Anderson Fields & Kahan*), for respondent.

¶1 COLEMAN, J. — Donald Stallman was ordered to pay child support for his three children. The order specified the

amount to be paid each month for each child. Samuel, one of the children, died, and Donald reduced his monthly payment by subtracting the amount the order had specified for that child. Susan Stallman, Donald's ex-wife, obtained a judgment against Donald for delinquent child support for Samuel under the theory that he could not unilaterally reduce his child support payment. The obligation to pay support terminated at the death of Samuel. Because the child support order segregated the total support paid into amounts per child, Donald was entitled to reduce his monthly payment by the amount allocated to support Samuel.

## FACTS

¶2 Donald and Susan Stallman's marriage was dissolved in 2002. At the time of the divorce, their three children Russell, Samuel, and Jake were 12, 10, and 7, respectively. Donald was ordered to pay child support to Susan, and the order provides:

> The obligor parent shall pay the following amounts per month for the following children:
>
> | Name | Amount |
> | --- | --- |
> | Russell Stallman | $428.79 |
> | Samuel Stallman | $276.22 |
> | Jake Stallman | $276.22 |
> | TOTAL MONTHLY AMOUNT | $981.23 |

In September 2003, Samuel died. For payments made after Samuel's death, Donald subtracted $276.22, the amount assigned to Samuel in the child support order. In April 2005, the child support order was modified on Donald's motion for the remaining children under the two-child schedule. Susan filed a motion for order to show cause, seeking to hold Donald in contempt and asking for a judgment in the amount of $5,125.70 plus $474.06 interest for delinquent child support for Samuel from September 2003 through March 2005. The motion was denied, and the

commissioner ruled that support for a child automatically terminates upon the child's death.

¶3 Susan then filed a motion to revise the commissioner's order, and it was granted. The court found no contempt but entered a judgment for $5,125.70 delinquent child support plus $474.06 interest. Donald filed a motion for reconsideration, but the court denied the motion. This appeal timely followed.

## ANALYSIS

¶4 Donald argues that his duty to pay child support for Samuel ended when Samuel died; thus, he was entitled to reduce his child support payment by the amount that the order allocated for Samuel's support. Susan argues that without a provision in the child support order stating that the support obligation ceases upon a child's death, the child support amount due remains unmodified.

¶5 Unless a child support order expressly provides otherwise, a parent's duty to pay support for a child generally continues until the child is emancipated. RCW 26.09-.170(3); *Ditmar v. Ditmar*, 48 Wn.2d 373, 374, 293 P.2d 759 (1956).

> It follows that a mother cannot compel payments of support money for children whose dependency upon her has ceased by reason of death, emancipation by marriage, attainment of majority, service in the Armed Forces of the United States, adoption, incarceration in penal or other custodial institutions, or economic sufficiency resulting from earnings, gifts, or inheritance.

*Ditmar*, 48 Wn.2d at 374-75. Here, the event triggering the termination of the support obligation was even clearer than nondependency—the death of a child leaves no room for dispute as to whether he or she is still dependent. The obligation terminated by operation of law upon his death. The question remaining is the amount by which Donald was entitled to reduce his transfer payment.

¶6 In *Ditmar*, a father was ordered to pay $80 in child support per month to his ex-wife for their three children. One child left to live with the father and another child married before the support term ended. The father reduced his support payment to approximately one-third of the original award, and the mother sued the father for back child support. The trial court's approval of the reductions was affirmed on appeal because the court found that a child support order is no longer operative as to a child who is no longer dependent. "In the absence of specific provisions to the contrary, there is a necessary implication in every decree for child support, that its binding effect shall extend into the future only for the period during which the children's dependency upon their custodian continues." *Ditmar*, 48 Wn.2d at 375.

¶7 A similar result was reached in *In re Marriage of Main*, 38 Wn. App. 351, 684 P.2d 1381 (1984). In that case, a father was ordered to pay $150 per month for each of his three children " 'until said children are no longer dependent, are emancipated, or until further order of [the] court.' " *Main*, 38 Wn. App. at 351. After the oldest child turned 18, the father reduced his payment by one-third. The mother obtained a judgment for back child support because the oldest child was still living at home and was dependent. The father appealed and the court reversed, construing the child support order to mean that the obligation continued until a child was *either* no longer dependent, emancipated, or until further order of the court. Thus, because the oldest child was emancipated because he had turned 18, the father was entitled to proportionally decrease his payment.[1]

---

[1] There is a split of authority as to the possibility of proportional abatement. *See* 24A AM. JUR. 2D *Divorce and Separation* § 1045 (1998):

> Where a support order is for the benefit of two or more children of a marriage and the duty to support one child terminates automatically by its emancipation, the support order abates proportionately, according to some authority. [Footnote citing *Ditmar* and *Codorniz v. Codorniz*, 34 Cal. 2d 811, 215 P.2d 32 (1950).] In other jurisdictions, however, a decree which fixes a monthly sum to be paid for the benefit of two or more children is deemed to require payment of the entire sum until the youngest child attains majority, or

¶8 An opposite result was reached in *State ex rel. Kibbe v. Rummel*, 36 Wn.2d 244, 217 P.2d 603 (1950), due to the wording of the child support order. There, a father was ordered to pay $35 per month for the support of his two children, and the amount was stated as a lump sum, not segregated between the children. When the older child became emancipated, the father reduced his payments by half. The court concluded that because the father had been ordered to pay a lump sum for his children, he was not entitled to unilaterally reduce the payment amount. The court noted that the father should have petitioned for a reduction in his payment, rather than reducing the payment on his own.

■ ¶9 *Ditmar, Main,* and *Kibbe* address the nature of a child support obligation upon emancipation or nondependency of a child, which can be based solely on age or on a combination of economic factors. The result in *Kibbe* was due to the fact that the support order had been drafted to require a lump sum payment for the children, not a per-child payment. But in *Ditmar* and *Main,* the court concluded that because the child support order had specified an amount to be paid per child, the obligor-parent could simply reduce the payment by the amount due for an emancipated or nondependent child.

¶10 Each of these cases predates the enactment of chapter 26.19 RCW. Child support is now calculated on the basis of the number of children and their respective ages, among other factors. Additional support may be ordered for health care, day care, and special expenses such as transportation, education, and recreation. Support may be further adjusted based on residential credits or a deviation granted by the court. Immediate certainty in the amount by which a parent is entitled to reduce their child support transfer payment is likely only if the order of support specifically

---

until the decree is otherwise prospectively modified by an order of the court.

Here, the child support amount allotted to each child was not strictly proportional but segregated by the terms of the order. Thus, because *Ditmar* stated that the duty to support in the case of death terminates automatically, the amount owing here abated according to the segregated amounts ordered.

states the amount that parent pays for that child. A proportional reduction of the amount of the transfer payment is likely to be the proper amount only if all the children are in the same age bracket and any and all additional support, credits, or deviation apply to all children uniformly.

¶11 Here, the child support order identified a segregated amount to be paid for Samuel's support. The monthly amount was totaled, but the order specifically allocated amounts for each child. A plain reading of the order thus supports Donald's understanding because the order stated precisely how much support was owed for Samuel; once Samuel died, Donald no longer owed support for him.

¶12 The economic table contained in the child support schedule provides a higher per child support amount for a two-child calculation than for a three-child calculation. When the support obligation was modified based on the two-child calculation, the amount of support owed by Donald was higher than the amount calculated by simply subtracting Samuel's allocation from the original order. While termination of support occurred as a matter of law without further court action, an adjustment or modification of support, not written into the original order,[2] requires that a motion or a petition be filed. A change in support can only be made prospectively from the filing of the motion or petition, at the earliest.

¶13 Because Samuel was no longer dependent and the child support order segregated the payment into a specific amount for each child, we conclude that Donald was en-

---

[2] The *Washington Family Law Deskbook* suggests two ways to address problems that can arise from a child support order, specifically upon emancipation:

> When setting child support for two children, one of whom will soon be emancipated, establish in the order a support obligation for the younger child effective the first day of the month after the older child is emancipated. Alternatively, provide for recalculation of child support when the older child graduates from high school or is otherwise emancipated earlier.

WASHINGTON STATE BAR ASSOCIATION, WASHINGTON FAMILY LAW DESKBOOK § 28.5(12), practice tip at 28-52 (2000). Similar provisions could have been included in the child support order here to establish a procedure to be followed if the duty of support terminated for any reason, including death or emancipation.

titled to reduce his monthly payment by the amount that had been allocated to Samuel, until further adjustment or modification. We reverse.

APPELWICK, C.J., and AGID, J., concur.